Matter of Kamensky (2022 NY Slip Op 02874)

Matter of Kamensky

2022 NY Slip Op 02874

Decided on April 28, 2022

Appellate Division, First Department

Per Curiam , J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 28, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Anil C. Singh,J.P.,
Lizbeth González
Tanya R. Kennedy
Saliann Scarpulla
Martin Shulman, JJ.

Motion No. 2022-00779 Case No. 2021-02725 

[*1]In the Matter of Daniel B. Kamensky, a Suspended Attorney: Attorney Grievance Committee for the First Judicial Department, Petitioner, Daniel B. Kamensky, (OCA Atty. Reg. No. 3046752.) Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on April 10, 2000.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Raymond Vallejo, of counsel), for petitioner.
Michael S. Ross, Esq., for respondent.

Per Curiam 

Respondent Daniel B. Kamensky was admitted to the practice of law in the State of New York by the First Judicial Department on April 10, 2000. At all times relevant to this proceeding, he maintained an office for the practice of law within the First Department.
On February 3, 2021, in the United States District Court for the Southern District of New York, respondent pleaded guilty to committing an act of bribery or extortion in connection with the federal bankruptcy laws (see 18 USC § 152[6]). Respondent timely notified this Court and the Attorney Grievance Committee (AGC) of his conviction. Respondent was sentenced to six months' imprisonment and six months' supervised release with a condition of home detention. He was fined $55,000 with an assessment of $100. He was released from prison two months early.
The AGC moved this Court for an order to deem respondent's offense as a "serious crime" under Judiciary Law § 90(4)(d) and to immediately suspend respondent pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.12(c)(2) and Judiciary Law § 90(4)(f). This Court granted the AGC's motion and determined that respondent's offense was a "serious crime" within the meaning of Judiciary Law § 90(4)(d) (Matter of Kamensky, 199 AD3d 114 [1st Dept 2021]). Respondent was suspended from the practice of law on September 16, 2021.
The parties now jointly move under 22 NYCRR 1240.8(a)(5) for an order imposing discipline by consent and request that respondent be suspended for a period of six months effective retroactively to September 16, 2021.
A joint motion for discipline by consent must include a stipulation of facts, the respondent's conditional admission to acts of professional misconduct and the violation of specific Rules of Professional Conduct, the relevant factors in mitigation and aggravation, and the agreed-upon discipline (see 22 NYCRR 1240.8[a][5][i]). The motion must also be accompanied by an affidavit from the respondent acknowledging the respondent's conditional admission of misconduct, the respondent's freely given consent to the agreed-upon discipline, and the respondent's full awareness of the consequences of such consent (see 22 NYCRR 1240.8[a][5][iii]).
The parties have stipulated to the following facts. Respondent started his own hedge fund, Marble Ridge Capital, in 2015. Marble Ridge Capital, in 2018, invested in unsecured bonds of Neiman Marcus. Neiman Marcus transferred a valuable online business, the MyTheresa subsidiary, out of the reach of its creditors ostensibly for the benefit of Neiman Marcus' private equity owners. During the next two years, respondent through Marble Ridge Capital pursued fraudulent conveyance claims against the private equity owners of Neiman Marcus.
Neiman Marcus commenced Chapter 11 Bankruptcy proceedings in May 2020. Respondent applied and was appointed to the Official [*2]Committee of Unsecured Creditors (Creditors' Committee) on behalf of Marble Ridge Capital. By statute, members of the Creditors' Committee are required to act as fiduciaries to all unsecured creditors and to put the interests of the unsecured creditors above their personal interests.
In the midst of the bankruptcy proceedings, Neiman Marcus agreed, as part of a settlement, to transfer back certain illiquid assets which would be held by a trust for the benefit of the unsecured creditors. After the settlement was accepted, the counsel to the Creditors' Committee made a proposal to allow unsecured creditors, as a class, the option to receive an upfront cash payment for their share of the illiquid assets that they are entitled to receive under the settlement. Marble Ridge Capital and other bondholders would fund the cash payment. The Creditors' Committee voted to continue negotiations with bondholders, including Marble Ridge Capital, for a potential cash-out option as part of a settlement.
During these proceedings, the counsel to the Creditors' Committee informed respondent that a trading desk at an investment bank expressed interest in placing a bid for the cash out option that was being negotiated. Specifically, the investment bank expressed interest in purchasing the Series B shares of the MyTheresa subsidiary from the unsecured creditors of Neiman Marcus.
Respondent telephoned a trader who worked on the trading desk at the investment bank, and he told the trader to refrain from placing a competing bid. Respondent threatened the trader by suggesting that he would use his position on the Creditors' Committee to ensure that the investment bank's bid would be rejected. He also informed the trader that he would withhold Marble Ridge Capital's future business from the investment bank if it did not step down. The investment bank initially communicated its decision not to make a bid; however it did place a bid the next day.
Several hours after respondent's phone call to the investment bank, the counsel to the Creditors' Committee informed respondent that the trader believed that respondent had threatened the investment bank. Respondent subsequently placed a second call to the trader. Respondent attempted to persuade the trader to falsely state that he was mistaken about the nature of respondent's previous call and that respondent only suggested that the investment bank should bid if it was making a serious offer. Respondent was federally indicted one month later.
Respondent conditionally admits that his conduct, violated Rules of Professional Conduct (22 NYCRR 1200.0) rules 8.4(b) (illegal conduct that adversely reflects on the lawyer's honesty, trustworthiness or fitness as a lawyer) and 8.4(h) (other conduct that adversely reflects on the lawyer's fitness as a lawyer).
In mitigation, the parties note that respondent has no prior disciplinary history and that the offense occurred within the span of a few hours. The parties also note that there [*3]was no harm to the unsecured creditors to whom respondent owed a fiduciary duty, as the investment bank placed a bid the following day after respondent's offense. Respondent also promptly withdrew from the Creditors' Committee and subordinated all of his personal interests in the Neiman Marcus bankruptcy. In settling his personal claims with the Neiman Marcus estate, he agreed to, among other things, never again serve on any official bankruptcy committee.
In aggravation, the parties emphasize that respondent harmed and threatened the integrity of the bankruptcy process. Respondent's coercive phone call to the trader was predicated upon Marble Ridge Capital's potential financial gain. In light of respondent's personal financial condition, there was no financial need for him to engage in the underlying misconduct. Furthermore, respondent willfully attempted to obstruct and impede the administration of justice with respect to the government's investigation of his offense by attempting to persuade the trader to change his account of the coercion.
We agree with the parties that the discipline to be imposed upon respondent should be a suspension for a period of six months effective retroactively to September 16, 2021 (cf. Matter of Novins, 119 AD3d 37 [1st Dept 2014]; Matter of Rosenblatt, 253 AD2d 106 [1st Dept 1999]).
Accordingly, the parties' joint motion for discipline by consent should be granted and respondent is suspended from the practice of law for a period of six months effective retroactively to September 16, 2021 and until further order of the Court. The AGC's petition of charges should be denied as moot.
All concur. It is Ordered that the parties' joint motion for discipline by consent pursuant to 22 NYCRR 1240.8(a)(5) is granted, and respondent Daniel B. Kamensky is suspended from the practice of law in the State of New York for a period of six months, effective retroactively to September 16, 2021, and continuing until further order of this Court, and It is further Ordered that the Attorney Grievance Committee's petition of charges is denied as moot, and It is further Ordered that during the period of suspension, respondent Daniel B. Kamensky is commanded to desist and refrain from (1) the practice of in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and It is further Ordered that respondent Daniel B. Kamensky shall comply with the rules governing the conduct of disbarred or suspended attorneys (see NYCRR 1240.15), which are made part hereof; and It is further Ordered that if respondent Daniel B. Kamensky has been issued a secure pass by the Office of Court Administration, it shall be returned to the issuing [*4]agency.
Entered: April 28, 2022